1

## <u>INDEX TO EXHIBITS</u>

2

<u>Page(s)</u>

3   <u>Exhibit A</u>   …………………………………………………………………   1-170

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

58712C



6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

## LEASE AGREEMENT

Contract Date:  7 - 1 5 · 2 o / 5                    Lease ID No.    CLBC8712

| LESSEE |
|---|

Individual Legal Name (if applicable):
Company Legal Name (if applicable):    Sonet Transportation and Logistics Inc.
Mailing Address: 22 W 35 Street Suite 205
City:National City State:CA    Zip: 91950

| EQUIPMENT |
|---|

| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
|---|---|---|---|
| 2012 | Freightliner | Cascadia | 1FUJGLBG7CLBC8712 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS |
|---|

| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
|---|---|---|---|---|---|---|---|---|---|
| 8 · 1 · 2015  9 · 1 · 2015 | 36 | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

**If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,300.00**

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

1. **GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

2. **INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

3. **RENT,** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law, LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

4. **OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

      **A.**    **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that

(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii) Lessee has been advised by tax counsel or other tax advisor, and

(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.**     **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein.   Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee.  THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5.   TAX INDEMNIFICATION.**  Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes.  In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder.  Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6.   USE OF VEHICLES.**  Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located.  Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessofor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7.   SURRENDER.**  Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and othersums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Page 3 of 6

Exhibit A
Page 3

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease.

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee.

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied.

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

Exhibit A
Page 4

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

25. GOVERNING LAW. This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26. WAIVER OF DAMAGES. Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

27. SUCCESSORS AND ASSIGNS. This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. FORCE MAJEURE. The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

[SIGNATURE PAGES FOLLOW]



IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: Bush Truck Leasing, Inc.

By: _____

Name: Diana S. Cornette

Title: Vice President

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

(X)Dated: 7·15·2015

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE



**6961 Cintas Blvd**
**Mason, OH 45040**

**800-766-2874**
**www.bushtrucks.com**

## LEASE AGREEMENT

Contract Date: 4·13 2015        Lease ID No.   **CLBC8715**

| LESSEE |
|---|
| Individual Legal Name (if applicable):<br>Company Legal Name (if applicable):    Sonet Transportation and Logistics Inc.<br>Mailing Address: 22 W 35 Street Suite 205<br>City:National City State:CA    Zip: 91950 |

### EQUIPMENT

| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
|---|---|---|---|
| 2012 | Freightliner | Cascadia | 1FUJGLBG2CLBC8715 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

### SUMMARY OF LEASE TERMS

| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
|---|---|---|---|---|---|---|---|---|---|
| 5-1·2015<br>6-1·2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

| If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,300.00 |
|---|

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

    **1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identifiedherein will be used for commercial purposes.

    **2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the"Term").

    **3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date (each an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

    **4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

        **A.**    **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

Exhibit A
Page 7

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRACResidual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that
(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii) Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5.** **TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6.** **USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor If not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessofor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7.** **SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a

Page 2 of 6

physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating to any such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation with respect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $1,000,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by

Page 3 of 6

operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease.

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee.

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied.

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law. The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor.

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest. If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee.

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect.

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto.

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

**25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Delaware. Delaware law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF DELAWARE, AND WAIVES ANY RIGHT TO ASSERT

THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26. **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limitm direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

27. **SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. **FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

**[SIGNATURE PAGES FOLLOW]**

**Page 5 of 6**

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR:  Bush Truck Leasing, Inc.

By: _____

Name:  Diana S. Cornette

Title:  Vice President

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

**EQUIPMENT ACCEPTANCE**

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: Sonet Transportation and Logistics Inc.

(X)Dated: ⁴ / 3 . 2ʋ/ 5

(X)By: _____
SIGNATURE



**6961 Cintas Blvd**
**Mason, OH 45040**

**800-766-2874**
**www.bushtrucks.com**

**LEASE AGREEMENT**

Contract Date: 6·1·2015

Lease ID No. CLBC8718

| LESSEE |
|---|

Individual Legal Name (if applicable):
Company Legal Name (if applicable):   Sonet Transportation and Logistics Inc.
Mailing Address: 22 W 35 Street Suite 205
City:National City State:CA       Zip: 91950

| EQUIPMENT |
|---|

| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
|---|---|---|---|
| 2012 | Freightliner | Cascadia | 1FUJGLBG8CLBC8718 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
| 6·1·2015<br>7·1·2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section4A herein, the "TRAC Residual" shall be $26,300.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

1. GRANT OF LEASE. Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, unwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles. Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

2. INITIAL TERM. The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") such as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the"Term").

3. RENT. The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION7 HEREOF.

4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE. Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

      A.    Terminal Rental Adjustment Clause ("TRAC"). Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that

(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii) Lessee has been advised by tax counsel or other tax advisor, and

(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** $1.00 Buyout. Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee, THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles "AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

8. **PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted

9. **WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FORANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement

10. **TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles

11. **LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof

12. **INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and othersums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

13. **TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

14. **FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

15. **LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle

16. **INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the Insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Page 3 of 6

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessof's prior written consent, Lessee shall notassign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date the (ii) at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles,discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No Interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lesseunder the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

Exhibit A
Page 16

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

25. **GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26. **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limiton direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

27. **SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. **FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

[SIGNATURE PAGES FOLLOW]



Page 5 of 6

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: Bush Truck Leasing, Inc.

By: _____

Name: Diana S. Cornette

Title: Vice President

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

**EQUIPMENT ACCEPTANCE**

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: Sonet Transportation and Logistics Inc.

(X)Dated: **6 - 3 - 15**

(X)By: _____
SIGNATURE

Page 6 of 6



6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

## LEASE AGREEMENT

Contract Date:  $6 - 8 \cdot 15$    Lease ID No.   CLBC8816

| LESSEE |
|---|
| Individual Legal Name (if applicable):<br>Company Legal Name (if applicable):  Sonet Transportation and Logistics Inc.<br>Mailing Address: 22 W 35 Street Suite 205<br>City: National City State: CA   Zip: 91950 |

| EQUIPMENT | | | |
|---|---|---|---|
| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | Cascadia | 1FUJGLBG8CLBC8816 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment Information appears above*

### SUMMARY OF LEASE TERMS

| Commencement<br>Date & 1st Basic<br>Rent Date | Initial<br>Term | Rental Periods | Total<br>Number of<br>Payments | Down<br>Payment +<br>Taxes at<br>Closing | Advance<br>or<br>Arrears | Basic Rent<br>(without<br>Taxes) | Doc Fee | Security<br>Deposit | End of Term<br>Option |
|---|---|---|---|---|---|---|---|---|---|
| $7 \cdot 1 \cdot 2015$<br>$8 - 1 \ 2015$ | 36<br>MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section4A herein, the "TRAC Residual" shall be $26,300.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

1. **GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identifiedherein will be used for commercial purposes.

2. **INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

3. **RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION7 HEREOF.

4. **OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

    A.    **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease.

Lessee hereby certifies, under penalty of perjury, that

(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii) Lessee has been advised by tax counsel or other tax advisor, and

(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles "AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessor for any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Exhibit A
Page 20

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FORANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Page 3 of 6

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

17. INDEMNITY. Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease

18. ASSIGNMENT. Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

19. DEFAULT. Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (I) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

20. REMEDIES. Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

21. SECURITY DEPOSIT. The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

22. SEVERABILITY. The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

23. NOTICES. All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

24. WAIVER. Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

     · **25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

     **26.**     **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

     **27. SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

     **28. FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

**[SIGNATURE PAGES FOLLOW]**

**Page 5 of 6**

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR:     **Bush Truck Leasing, Inc.**

By: _____

Name:   Diana S. Cornette

Title:    Vice President

---

LESSEE: **Sonet Transportation and Logistics Inc.**



(X)By: _____
     SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: **Sonet Transportation and Logistics Inc.**

(X)Dated:  6 - 3 - 1 5

(X)By: _____
     SIGNATURE

Page 6 of 6



**BUSH** TRUCK LEASING, INC.

6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

## LEASE AGREEMENT

**Contract Date:** 5-13-2015          **Lease ID No.** CLBC8917

| LESSEE |
|---|
| Individual Legal Name (if applicable): |
| Company Legal Name (if applicable):  Sonet Transportation and Logistics Inc. |
| Mailing Address: 22 W 35 Street Suite 205 |
| City: National City State: CA  Zip: 91950 |

### EQUIPMENT

| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
|---|---|---|---|
| 2012 | Freightliner | Cascadia | 1FUJGLBG3CLBC8917 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

### SUMMARY OF LEASE TERMS

| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
|---|---|---|---|---|---|---|---|---|---|
| 6-1-2015 7-1-2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

| If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,300.00 |
|---|

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

**1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identifiedherein will be used for commercial purposes.

**2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the"Term").

**3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date, and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

**4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

    **A. Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Exhibit A
Page 25

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRACResidual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that

(i)     Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii)    Lessee has been advised by tax counsel or other tax advisor, and

(iii)   Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.**     **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein.     Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee.  THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5.     TAX INDEMNIFICATION.**  Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes.  In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6.     USE OF VEHICLES.**  Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor.  After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles.  Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessofor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses.  Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7.     SURRENDER.**  Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default as set forth in Section 19 hereof, Lessee shall, at its own expense, return such Vehicle to Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a

Page 2 of 6

physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating to any such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation with respect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $1,000,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by

Page 3 of 6

operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease.

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall notassign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

**25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Delaware. Delaware law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF DELAWARE, AND WAIVES ANY RIGHT TO ASSERT

THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26.      **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

27. **SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. **FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

**[SIGNATURE PAGES FOLLOW]**

Page 5 of 6

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: Bush Truck Leasing, Inc.

By: _____

Name: **Diana S. Cornette**

Title: **Vice President**

LESSEE: **Sonet Transportation and Logistics Inc.**

(X)By: _____
SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: **Sonet Transportation and Logistics Inc.**

(X)Dated: 5·13.2015

(X)By: _____
SIGNATURE

Page 6 of 6



**BUSH**
TRUCK LEASING, INC.

6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

## LEASE AGREEMENT

**Contract Date:** 5-21-2015          **Lease ID No.** CLBC8918

| LESSEE |
|---|
| Individual Legal Name (if applicable):<br>Company Legal Name (if applicable):      Sonet Transportation and Logistics Inc.<br>Mailing Address: 22 W 35 Street Suite 205<br>City: National City State: CA      Zip: 91950 |

### EQUIPMENT

| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
|---|---|---|---|
| 2012 | Freightliner | Cascadia | 1FUJGLBG5CLBC8918 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

### SUMMARY OF LEASE TERMS

| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
|---|---|---|---|---|---|---|---|---|---|
| 6-1-2015<br>7-1-2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

**If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,300.00.**

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

    **1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, or warranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles. Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

    **2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

    **3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

    **4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

      **A.**    **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that

(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii) Lessee has been advised by tax counsel or other tax advisor, and

(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessofor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessee may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and othersums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease paymeunts after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, all to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term  of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

Exhibit A
Page 34

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

25. **GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules  LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26.    **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor.  Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease.  Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

27. **SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. **FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

[SIGNATURE PAGES FOLLOW]

Page 5 of 6

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: Bush Truck Leasing, Inc.

By: _____

Name: Diana S. Cornette

Title: Vice President

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

(X)Dated: 5-21 2015

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE



**6961 Cintas Blvd**
**Mason, OH 45040**

**800-766-2874**
**www.bushtrucks.com**

## LEASE AGREEMENT

Contract Date: 4/15/2015          Lease ID No.     CLBC8974

| LESSEE |
|---|
| Individual Legal Name (if applicable): |
| Company Legal Name (if applicable):     Sonet Transportation and Logistics Inc. |
| Mailing Address: 22 W 35 Street Suite 205 |
| City:National City  State:CA     Zip: 91950 |

### EQUIPMENT

| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
|---|---|---|---|
| 2012 | Freightliner | Cascadia | 1FUJGLBG4CLBC8974 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

### SUMMARY OF LEASE TERMS

| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
|---|---|---|---|---|---|---|---|---|---|
| 5-1-2015  6-1-2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

**If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,300.00**

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

1. **GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, or warranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

2. **INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

3. **RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

4. **OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

    **A.** **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

Exhibit A
Page 37

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRACResidual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that
(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii) Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessofor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such modifications, Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to Lessorto such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a

physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FORANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plate) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $1,000,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss' payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by

Page 3 of 6

Exhibit A
Page 39

operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease.

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessol's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No Interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lesseeunder the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

**25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Delaware. Delaware law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF DELAWARE, AND WAIVES ANY RIGHT TO ASSERT

Page 4 of 6

THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26.      WAIVER OF DAMAGES. Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

27. SUCCESSORS AND ASSIGNS.  This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. FORCE MAJEURE.  The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

[SIGNATURE PAGES FOLLOW]

Page 5 of 6

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: Bush Truck Leasing, Inc.

By: _____

Name: Diana S. Cornette

Title: Vice President

LESSEE: Sonet Transportation and Logistics Inc.

(X) By: _____
          SIGNATURE

**EQUIPMENT ACCEPTANCE**

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: Sonet Transportation and Logistics Inc.

(X) Dated: _____

(X) By: _____
          SIGNATURE

Page 6 of 6



**BUSH**
*TRUCK LEASING, INC.*

6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

## LEASE AGREEMENT

Contract Date: 3·18·2015          Lease ID No.   **CLBF1032**

| LESSEE |
|---|
| Individual Legal Name (if applicable): |
| Company Legal Name (if applicable):   **Sonet Transportation and Logistics Inc.** |
| Mailing Address: 22 W 35 Street Suite 205 |
| City: National City  State: CA   Zip: 91950 |

### EQUIPMENT

| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
|---|---|---|---|
| 2012 | Freightliner | Cascadia | 1FUJGLBG1CLBF1032 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

### SUMMARY OF LEASE TERMS

| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
|---|---|---|---|---|---|---|---|---|---|
| 4·1·2015 5-1·2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

**If Option Upon Expiration of Initial Term of Lease is TRAC under Section4A herein, the "TRAC Residual" shall be $23,540.00**

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

**1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identifiedherein will be used for commercial purposes.

**2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

**3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

**4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

    **A.**     **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Exhibit A
Page 43

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRACResidual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that
(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii) Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.**      **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein.   Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee.   THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5.   TAX INDEMNIFICATION.**  Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6.   USE OF VEHICLES.**  Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessofor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7.   SURRENDER.**  Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a

Page 2 of 6

Exhibit A
Page 44

physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FORANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $1,000,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by

Page 3 of 6

Exhibit A
Page 45

operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default

**25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Delaware. Delaware law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF DELAWARE, AND WAIVES ANY RIGHT TO ASSERT

THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

    **26.**    **WAIVER OF DAMAGES.** Lessee waives to the fullest extentpermitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limiton direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

    **27. SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

    **28. FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

[SIGNATURE PAGES FOLLOW]



**Page 5 of 6**

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: Bush Truck Leasing, Inc.

By: _____

Name: Diana S. Cornette

Title: Vice President

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

(X)Dated: 3.18.2015

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

Page 6 of 6





## GUARANTY

North Star Gas, Ltd Co. ("Guarantor"), does hereby guarantee the payment and performance of all debts, liabilities and other obligations of Sonet Transportation and Logistics Inc. ("Obligor") to Bush Truck Leasing, Inc. and Bush Leasing Trust and their successors and assigns (collectively, "Bush") WHETHER NOW EXISTING OR HEREAFTER ARISING (collectively, the "Obligations"), including those arising under any lease agreement by and between Obligor and Bush and any other documents, instruments or agreements executed in connection therewith, in each case, as amended from time to time. In the event that Obligor fails to make any payment to Bush, or fails to perform in any manner with regard to the Obligations, the Guarantor does hereby promise to make all payments and perform all Obligations to Bush in the same manner as required by Obligor. This Guaranty is a continuing one and shall terminate only upon full payment and performance of all other Obligations.

The obligations of Guarantor under this Guaranty are absolute and unconditional and shall not be limited, discharged or terminated as a result of any: (a) change in the amount, time or manner of payment of any obligations due under, or any term or condition of, any Obligation, (b) the assignment of any Obligation, or the sale or transfer of all, or any portion, of any equipment or collateral securing any Obligation or (c) other act or failure to act or event or circumstance which varies the risk of the Guarantor with respect to any Obligation or which, but for the provisions hereof would as a matter of law or equity, operate to reduce, limit or terminate the obligations of the Guarantor hereunder. Guarantor waives any right to require Bush to: (i) proceed against Obligor, (ii) proceed against any security held from Obligor, (iii) pursue any other remedy in Bush's power, or (iv) notify Guarantor of any default by Obligor in respect of any Obligation. Guarantor waives any defense arising by reason of any disability or other defense of Obligor, any lack of authority of Obligor with respect to any Obligation, the invalidity, illegality or lack of enforceability of any Obligation from any cause whatsoever, the failure of Bush to perfect or maintain perfection of any security interest in any collateral or the cessation from any cause whatsoever of the liability of Obligor, and any other defense under applicable law which might be available as a defense against, or a reduction or limitation of, the obligations of Guarantor hereunder. Guarantor shall have no right of subrogation, and waives any right or claim to enforce any remedy, including without limitation, any right of reimbursement or contribution against Obligor, and waives any benefit of any security now or hereafter held by Bush. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices or protest, notices of dishonor, notices of acceptance of this guaranty.

This guaranty is a guaranty of payment and not a guaranty of collection. Upon Obligor's failure to pay or perform the any Obligation promptly when due, Bush may proceed against the Guarantor to collect such Obligation, with or without proceeding against the Obligor, or any co-surety or co-guarantor, or any collateral. Any and all payments in respect of the Obligations may be applied by Bush in whatever manner it may determine in its sole discretion. The Guarantor agrees to reimburse Bush for all costs and expenses, including, without limitation attorneys' fees, incurred or paid by Bush in exercising any right, power, or remedy conferred by this Guaranty.

The obligations of Guarantor are independent of the obligations of Obligor. Guarantor independently and without reliance on any information supplied by Bush, has taken, and will continue to take, whatever steps it deems necessary to evaluate the financial condition and affairs of Obligor and Bush shall have no duty to advise Guarantor of information at any time known to Bush regarding such financial conditions and affairs. The Guarantor agrees that this guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment, or any part thereof, in respect of any Obligation is rescinded or must otherwise be restored by Bush upon the bankruptcy or reorganization of Obligor, any other person or otherwise.

This Guaranty shall be governed by and construed in accordance with the laws of the State of Ohio. Any judicial proceeding arising out of or relating to this Guaranty may be brought in any court of competent jurisdiction in Hamilton County, Ohio and Guarantor accepts the jurisdiction of such courts and waives any objection as to the venue of any such proceeding brought in such court or that such court is an inconvenient forum. GUARANTOR HEREBY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR MAY BE PARTIES ARISING OUT OF THIS GUARANTY. The Guarantor also acknowledges that Bush retains the right to check the Guarantor's credit history and/or references.

IN WITNESS WHEREOF, this Guaranty is entered into this _28_ day of _FEB_, _2015_.

North Star Gas, Ltd Co.                                   Sonet Transportation and Logistics Inc.

By: _____                                         By: _____

Name: _Brandon Woodard_                                   Name: _ARMANDO FREIRE_

Title: _Controller_                                       Title: _COO_

3027787.1



6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

**LEASE AGREEMENT**

Contract Date: 3 - 18 2015          Lease ID No.    CLBF1033

| LESSEE |
|---|

Individual Legal Name (if applicable):
Company Legal Name (if applicable):    Sonet Transportation and Logistics Inc.
Mailing Address: 22 W 35 Street Suite 205
City: National City    State: CA    Zip: 91950

| EQUIPMENT |
|---|

| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
|---|---|---|---|
| 2012 | Freightliner | Cascadia | 1FUJGLBG3CLBF1033 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
| 4-1-2015 5-1-2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $23,540.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

1. **GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, oswarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

2. **INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

3. **RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

4. **OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

    **A.**     **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Exhibit A
Page 50

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that
(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii) Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles "AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessor for any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a

Page 2 of 6

physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FORANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and othersums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $1,000,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee shall receive credit for any amounts paid to Lessor by the insurer against Lessee obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by

Page 3 of 6

operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall notassign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lesseunder the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

**25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Delaware. Delaware law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF DELAWARE, AND WAIVES ANY RIGHT TO ASSERT

Page 4 of 6

Exhibit A
Page 53

THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26.    WAIVER OF DAMAGES. Lessee waives to the fullest extentpermitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limiton direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

27. SUCCESSORS AND ASSIGNS. This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. FORCE MAJEURE. The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

[SIGNATURE PAGES FOLLOW]

Page 5 of 6

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: Bush Truck Leasing, Inc.

By: _____

Name: Diana S. Cornette

Title: Vice President

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
             SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: Sonet Transportation and Logistics Inc.

(X)Dated: 3 · 18 · 2015

(X)By: _____
             SIGNATURE

Page 6 of 6

 **BUSH** TRUCK LEASING, INC.

 **BUSH** LEASING TRUST

## GUARANTY

North Star Gas. Ltd Co. ("Guarantor"), does hereby guarantee the payment and performance of all debts, liabilities and other obligations of Sonet Transportation and Logistics Inc. ("Obligor") to Bush Truck Leasing, Inc. and Bush Leasing Trust and their successors and assigns (collectively, "Bush") WHETHER NOW EXISTING OR HEREAFTER ARISING (collectively, the "Obligations"), including those arising under any lease agreement by and between Obligor and Bush and any other documents, instruments or agreements executed in connection therewith, in each case, as amended from time to time. In the event that Obligor fails to make any payment to Bush, or fails to perform in any manner with regard to the Obligations, the Guarantor does hereby promise to make all payments and perform all Obligations to Bush in the same manner as required by Obligor. This Guaranty is a continuing one and shall terminate only upon full payment and performance of all other Obligations.

The obligations of Guarantor under this Guaranty are absolute and unconditional and shall not be limited, discharged or terminated as a result of any: (a) change in the amount, time or manner of payment of any obligations due under, or any term or condition of, any Obligation, (b) the assignment of any Obligation, or the sale or transfer of all, or any portion, of any equipment or collateral securing the Obligations or (c) other act or failure to act or event or circumstance which varies the risk of the Guarantor with respect to any Obligation or which, but for the provisions hereof would as a matter of law or equity, operate to reduce, limit or terminate the obligations of the Guarantor hereunder. Guarantor waives any right to require Bush to: (i) proceed against Obligor, (ii) proceed against any security held from Obligor, (iii) pursue any other remedy in Bush's power, or (iv) notify Guarantor of any default by Obligor in respect of any Obligation. Guarantor waives any defense arising by reason of any disability or other defense of Obligor, any lack of authority of Obligor with respect to any Obligation, the invalidity, illegality or lack of enforceability of any Obligation from any cause whatsoever, the failure of Bush to perfect or maintain perfection of any security interest in any collateral or the cessation from any cause whatsoever of the liability of Obligor, and any other defense under applicable law which might be available as a defense against, or a reduction or limitation of, the obligations of Guarantor hereunder. Guarantor shall have no right of subrogation, and waives any right or claim to enforce any remedy, including without limitation, any right of reimbursement or contribution against Obligor, and waives any benefit of any security now or hereafter held by Bush. Guarantor waives all presentments, demands for performance, notices of nonperformance, protests, notices or protest, notices of dishonor, notices of acceptance of this guaranty.

This guaranty is a guaranty of payment and not a guaranty of collection. Upon Obligor's failure to pay or perform the any Obligation promptly when due, Bush may proceed against the Guarantor to collect such Obligation, with or without proceeding against the Obligor, or any co-surety or co-guarantor, or any collateral. Any and all payments in respect of the Obligations may be applied by Bush in whatever manner it may determine in its sole discretion. The Guarantor agrees to reimburse Bush for all costs and expenses, including, without limitation attorneys' fees, incurred or paid by Bush in exercising any right, power, or remedy conferred by this Guaranty.

The obligations of Guarantor are independent of the obligations of Obligor. Guarantor independently and without reliance on any information supplied by Bush, has taken, and will continue to take, whatever steps it deems necessary to evaluate the financial condition and affairs of Obligor and Bush shall have no duty to advise Guarantor of information at any time known to Bush regarding such financial conditions and affairs. The Guarantor agrees that this guaranty shall continue to be effective or be reinstated, as the case may be, if at any time any payment, or any part thereof, in respect of any Obligation is rescinded or must otherwise be restored by Bush upon the bankruptcy or reorganization of Obligor, any other person or otherwise.

This Guaranty shall be governed by and construed in accordance with the laws of the State of Ohio. Any judicial proceeding arising our of or relating to this Guaranty may be brought in any court of competent jurisdiction in Hamilton County, Ohio and Guarantor accepts the jurisdiction of such courts and waives any objection as to the venue of any such proceeding brought in such court or that such court is an inconvenient forum. GUARANTOR HEREBY WAIVES TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO WHICH GUARANTOR MAY BE PARTIES ARISING OUT OF THIS GUARANTY. **The Guarantor also acknowledges that Bush retains the right to check the Guarantor's credit history and/or references.**

IN WITNESS WHEREOF, this Guaranty is entered into this _28_ day of _FEB_ , _2015_ .

North Star Gas. Ltd Co.

By: _____

Name: _Brandon Woolard_

Title: _Controller_

Sonet Transportation and Logistics Inc.

By: _____

Name: _ARMANdo FREIRE_

Title: _COO_

3027787.1



**BUSH**
*TRUCK LEASING, INC.*

6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

**LEASE AGREEMENT**

Contract Date: 7 · 20 · 2015          Lease ID No.    CSBM0141

| LESSEE |
|---|
| Individual Legal Name (if applicable): |
| Company Legal Name (if applicable):    Sonet Transportation and Logistics Inc. |
| Mailing Address: 22 W 35 Street Suite 205 |
| City: National City   State: CA     Zip: 91950 |

| EQUIPMENT | | | |
|---|---|---|---|
| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | Cascadia | 1FUJGLBG3CSBM0141 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
| 8 · 1 · 2015  9 · 1 · 2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section4A herein, the "TRAC Residual" shall be $26,950.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and **LESSEE** referenced above.

**1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of such Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

**2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

**3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

**4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

A.    Terminal Rental Adjustment Clause ("TRAC"). Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRACResidual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that
(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii) Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessorfor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignees or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating to any such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation with respect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Page 3 of 6

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease.

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee.

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No Interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

Exhibit A
Page 60

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

25. **GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26. **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

27. **SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. **FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

[SIGNATURE PAGES FOLLOW]

Exhibit A
Page 61

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: **Bush Truck Leasing, Inc.**

By: _____

Name: **Diana S. Cornette**

Title: **Vice President**

LESSEE: Sonet Transportation and Logistics Inc.

(X) By: _____
SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

(X) Dated: _____7~1~15_____

LESSEE: Sonet Transportation and Logistics Inc.

(X) By: _____
SIGNATURE

Page 6 of 6



**6961 Cintas Blvd
Mason, OH 45040**

**800-766-2874
www.bushtrucks.com**

## LEASE AGREEMENT

Contract Date: 𝒴·2 5·2 0 ⁄ 5       Lease ID No.    CSBM0142

### LESSEE

Individual Legal Name (if applicable):
Company Legal Name (if applicable):    Sonet Transportation and Logistics Inc.
Mailing Address: 22 W 35 Street Suite 205
City:National City State:CA    Zip: 91950

### EQUIPMENT

| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
|---|---|---|---|
| 2012 | Freightliner | Cascadia | 1FUJGLBG5CSBM0142 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

### SUMMARY OF LEASE TERMS

| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
|---|---|---|---|---|---|---|---|---|---|
| 9·1·2015 10·1·2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $27,639.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and **LESSEE** referenced above.

1. **GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

2. **INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

3. **RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

4. **OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

     A.    Terminal Rental Adjustment Clause ("TRAC"). Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that
(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii) Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessofor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating to any such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation with respect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Exhibit A
Page 65

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease.

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee.

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law. The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority: (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest. If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

Exhibit A
Page 66

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

**25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURYIN ANY LITIGATIONARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

**26.     WAIVER OF DAMAGES.** Lessee waives to the fullest extentpermitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limiton direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

**27. SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

**28. FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

[SIGNATURE PAGES FOLLOW]

Page 5 of 6

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR:   Bush Truck Leasing, Inc.

By: _____

Name: __Diana S. Cornette__

Title: __Vice President__

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
         SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: Sonet Transportation and Logistics Inc.

(X)Dated: __8/12/15__

(X)By: _____
         SIGNATURE

Page 6 of 6



6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

**LEASE AGREEMENT**

Contract Date: 6·22·2015                    Lease ID No.    CLBC8500

| LESSEE |
|---|
| Individual Legal Name (if applicable): |
| Company Legal Name (if applicable):     Sonet Transportation and Logistics Inc. |
| Mailing Address: 22 W 35 Street Suite 205 |
| City:National City State:CA     Zip: 91950 |

| EQUIPMENT | | | |
|---|---|---|---|
| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | Cascadia | 1FUJGLBG3CLBC8500 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
| 7·1·2015 8·1·2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section4A herein, the "TRAC Residual" shall be $26,300.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

    **1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of such Vehicles, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, owarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles. Lessee certifies that the Vehicles identifiedherein will be used for commercial purposes.

    **2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the"Term").

    **3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION,ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION7 HEREOF.

    **4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

        **A.**    **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that

(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii) Lessee has been advised by tax counsel or other tax advisor, and

(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessor for any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its own option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Exhibit A
Page 70

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FORANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

17. INDEMNITY. Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease

18. ASSIGNMENT. Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall notassign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

19. DEFAULT. Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

20. REMEDIES. Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles,discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

21. SECURITY DEPOSIT. The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No Interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lesseeunder the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

22. SEVERABILITY. The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

23. NOTICES. All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party herein

24. WAIVER. Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

      25. **GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

      26.    **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

      27. **SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

      28. **FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

[SIGNATURE PAGES FOLLOW]

Page 5 of 6

Exhibit A
Page 73

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: **Bush Truck Leasing, Inc.**

By: _____

Name: Diana S. Cornett
Title: Vice President

---

LESSEE: **Sonet Transportation and Logistics Inc.**

(X)By: _____
SIGNATURE

**EQUIPMENT ACCEPTANCE**

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: **Sonet Transportation and Logistics Inc.**

(X)Dated: 6-3-15

(X)By: _____
SIGNATURE



**6961 Cintas Blvd**
**Mason, OH 45040**

**800-766-2874**
**www.bushtrucks.com**

## LEASE AGREEMENT

Contract Date:  5-13-2015          Lease ID No.    CLBC8501

| LESSEE |
|---|
| Individual Legal Name (if applicable): |
| Company Legal Name (if applicable):    Sonet Transportation and Logistics Inc. |
| Mailing Address:  22 W 35 Street Suite 205 |
| City: National City  State: CA   Zip: 91950 |

| EQUIPMENT | | | |
|---|---|---|---|
| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | Cascadia | 1FUJGLBG5CLBC8501 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

### SUMMARY OF LEASE TERMS

| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
|---|---|---|---|---|---|---|---|---|---|
| 6-1-2015 7-1-2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

| If Option Upon Expiration of Initial Term of Lease is TRAC under Section4A herein, the "TRAC Residual" shall be $26,300.00 |
|---|

**THIS LEASE AGREEMENT** ("Lease") is hereby entered into as of the Contract Date above by and between **BUSH TRUCK LEASING, INC.** ("Lessor"), and **LESSEE** referenced above.

    **1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identifiedherein will be used for commercial purposes.

    **2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the"Term").

    **3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, DEDUCTION, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

    **4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

        **A.**     **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

Exhibit A
Page 75

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that
(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii) Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessof or any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a

Page 2 of 6

Exhibit A
Page 76

physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $1,000,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by

Exhibit A
Page 77

operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority: (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No Interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default

**25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Delaware. Delaware law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF DELAWARE, AND WAIVES ANY RIGHT TO ASSERT

Page 4 of 6

THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26. **WAIVER OF DAMAGES.** Lessee waives to the fullest extentpermitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limiton direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

27. **SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. **FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

**[SIGNATURE PAGES FOLLOW]**

Page 5 of 6

Exhibit A
Page 79

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR:   Bush Truck Leasing, Inc.

By: _____

Name:  Diana S. Cornette

Title:  Vice President

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
         SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: Sonet Transportation and Logistics Inc.

(X)Dated:  5 · 13 · 2015

(X)By: _____
         SIGNATURE

Page 6 of 6



6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

## LEASE AGREEMENT

**Contract Date:** 7·15·2015          Lease ID No.     CLBC8667

| LESSEE |
|---|
| Individual Legal Name (if applicable): |
| Company Legal Name (if applicable): Sonet Transportation and Logistics Inc. |
| Mailing Address: 22 W 35 Street Suite 205 |
| City: National City State: CA     Zip: 91950 |

| EQUIPMENT | | | |
|---|---|---|---|
| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | Cascadia | 1FUJGLBG6CLBC8667 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
| 8·1·2015 9·1·2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,300.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

1. GRANT OF LEASE. Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

2. INITIAL TERM. The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

3. RENT. The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE. Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

  **A.**   Terminal Rental Adjustment Clause ("TRAC"). Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Exhibit A
Page 81

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRACResidual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that

(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii) Lessee has been advised by tax counsel or other tax advisor, and

(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessofor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FORANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Page 3 of 6

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee, Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"); or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No Interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lesseeunder the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

Exhibit A
Page 84

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

25. **GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26. **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

27. **SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. **FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR:   Bush Truck Leasing, Inc.

By: _____

Name: __Diana S. Cornette__

Title: __Vice President__

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
        SIGNATURE

## EQUIPMENT ACCEPTANCE
Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

(X)Dated: __6-3-15__

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
        SIGNATURE

Page 6 of 6



**BUSH** TRUCK LEASING, INC.

6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

**LEASE AGREEMENT**

Contract Date: 6·1·2015          Lease ID No.     CLBC8668

| LESSEE |
|---|
| Individual Legal Name (if applicable):<br>Company Legal Name (if applicable):   Sonet Transportation and Logistics Inc.<br>Mailing Address:  22 W 35 Street Suite 205<br>City:National City State:CA          Zip: 91950 |

| EQUIPMENT | | | |
|---|---|---|---|
| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | Cascadia | 1FUJGLBG8CLBC8668 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
| 6·1·2015<br>7·1·2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section4A herein, the "TRAC Residual" shall be $26,300.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

1. **GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, owarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identifiedherein will be used for commercial purposes.

2. **INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the"Term").

3. **RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION7 HEREOF.

4. **OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

A.   Terminal Rental Adjustment Clause ("TRAC"). Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that
(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii) Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles "AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessofor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessee may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating to any such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation with respect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in terms of policy or cancellation thereof; and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Page 3 of 6

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease.

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles,discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lesseeunder the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

Exhibit A
Page 90

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

25. GOVERNING LAW. This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURYIN ANY LITIGATIONARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26.     WAIVER OF DAMAGES. Lessee waives to the fullest extentpermitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limiton direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

27. SUCCESSORS AND ASSIGNS. This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. FORCE MAJEURE. The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

[SIGNATURE PAGES FOLLOW]

Page 5 of 6

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR:     Bush Truck Leasing, Inc.

By: _____

Name:  Diana S. Cornette

Title:  Vice President

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
            SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: Sonet Transportation and Logistics Inc.

(X)Dated:  6 - 3 - 1 5

(X)By: _____
            SIGNATURE

Page 6 of 6

Exhibit A
Page 92



6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

**LEASE AGREEMENT**

Contract Date: 6 - 17. 2015                    Lease ID No.    CLBC8669

| LESSEE |
|---|

Individual Legal Name (if applicable):
Company Legal Name (if applicable):    Sonet Transportation and Logistics Inc.
Mailing Address: 22 W 35 Street Suite 205
City: National City  State: CA     Zip: 91950

| EQUIPMENT | | | |
|---|---|---|---|
| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | Cascadia | 1FUJGLBGXCLBC8669 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
| 7 - 1 · 2015<br>8 · 1 · 2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

**If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,300.00**

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

    **1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identifiedherein will be used for commercial purposes.

    **2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

    **3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

    **4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

        A.    **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

Exhibit A
Page 93

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRACResidual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

    Lessee hereby certifies, under penalty of perjury, that
(i)   Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii)  Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.**    **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessofor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating to any such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation with respect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein (in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Page 3 of 6

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease.

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No Interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

25. **GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26. **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

27. **SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. **FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

**[SIGNATURE PAGES FOLLOW]**

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: Rush Truck Leasing, Inc.

By: _____
      Diana S. Cornette

Name: Vice President

Title: _____

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
      SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: Sonet Transportation and Logistics Inc.

(X)Dated: 4-21-15

(X)By: _____
      SIGNATURE

Page 6 of 6



6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

## LEASE AGREEMENT

Contract Date:    6 · 17 · 2015         Lease ID No.    CLBC8670

| LESSEE |
|---|
| Individual Legal Name (if applicable): |
| Company Legal Name (if applicable): Sonet Transportation and Logistics Inc. |
| Mailing Address: 22 W 35 Street Suite 205 |
| City:National City State:CA    Zip: 91950 |

| EQUIPMENT | | | |
|---|---|---|---|
| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | Cascadia | 1FUJGLBG6CLBC8670 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
| 7 · 1 · 2015<br>8 · 1 · 2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,300.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

**1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, owarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

**2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

**3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

**4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

    **A.** **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRACResidual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that

(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii) Lessee has been advised by tax counsel or other tax advisor, and

(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW, and Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessorfor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Exhibit A
Page 100

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FORANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

    **17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder  The provisions of this Section 17 shall survive termination of this Lease

    **18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees  Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

    **19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee  Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

    **20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following:  (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process,  Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law  The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority  (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages.  If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency.  Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days.  Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter.  Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor.  Lessor's remedies hereunder shall be cumulative.  Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20.  Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies.  Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease.  Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages.  In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

    **21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules.  The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds.  No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest  If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above.  In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease  If no Default has then occurred, upon the expiration or earlier termination of the Term  of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

    **22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

    **23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

    **24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

**25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

**26.      WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

**27. SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

**28. FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

[SIGNATURE PAGES FOLLOW]

Page 5 of 6

Exhibit A
Page 103

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR:   Bush Truck Leasing, Inc.

By: _____

Name:   Diana S. Cornette

Title:   Vice President

LESSEE:  Sonet Transportation and Logistics Inc.

(X)By: _____
        SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE:  Sonet Transportation and Logistics Inc.

(X)Dated: _6 · 17 · 2015_

(X)By: _____
        SIGNATURE

Page 6 of 6



**6961 Cintas Blvd**
**Mason, OH 45040**

**800-766-2874**
**www.bushtrucks.com**

## LEASE AGREEMENT

Contract Date: 5-2 2015     Lease ID No.     CLBC8674

| LESSEE |
| --- |

Individual Legal Name (if applicable):
Company Legal Name (if applicable):     Sonet Transportation and Logistics Inc.
Mailing Address: 22 W 35 Street Suite 205
City: National City State: CA     Zip: 91950

| EQUIPMENT | | | |
| --- | --- | --- | --- |
| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | Cascadia | 1FUJGLBG3CLBC8674 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
| 6-1-2015 7-1-2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

| If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,300.00 |
| --- |

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

    **1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identifiedherein will be used for commercial purposes.

    **2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the"Term").

    **3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

    **4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

        **A.** **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that
(i)   Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii)  Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein.   Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee.  THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessorfor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Page 3 of 6

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessof's prior written consent, Lessee shall notassign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No Interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lesseeunder the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

      **25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

      **26.**    **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

      **27. SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

      **28. FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

**[SIGNATURE PAGES FOLLOW]**

Exhibit A
Page 109

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: Bush Truck Leasing, Inc.

By: _____

Name: **Diana S. Cornette**

Title: **Vice President**


LESSEE: Sonet Transportation and Logistics Inc.

(X) By: _____
       SIGNATURE


## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease


LESSEE: Sonet Transportation and Logistics Inc.

(X) Dated: 4 - 21 - 15

(X) By: _____
       SIGNATURE


Page 6 of 6



Mason, Ohio 45040
800-766-2874 / 513-234-7910
Fax 513-234-7940

**vehicletitling**

### LEASE AGREEMENT

Contract Date: 10·1·2015          Lease ID No.     CSBM0143

| LESSEE |
|---|

Individual Legal Name (if applicable):
Company Legal Name (if applicable):     Sonet Transportation and Logistics Inc.
Mailing Address: 22 W 35 Street Suite 205
City: National City   State: CA     Zip: 91950

| EQUIPMENT | | | | |
|---|---|---|---|---|
| Vehicle Year | Vehicle Make | | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | | Cascadia | 1FUJGLBG7CSBM0143 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

### SUMMARY OF LEASE TERMS

| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
|---|---|---|---|---|---|---|---|---|---|
| 10·1·2015 11·1·2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $27,639.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between Vehicle Titling Trust ("Lessor"), and LESSEE referenced above.

    **1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, or warranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

    **2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

    **3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

    **4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

        **A.** **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that

(i)   Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii)  Lessee has been advised by tax counsel or other tax advisor, and

(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

B.      $1.00 Buyout. Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein.   Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee.   THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

5. TAX INDEMNIFICATION. Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder.   Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

6. USE OF VEHICLES. Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessee's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessorfor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

7. SURRENDER. Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

**Page 2 of 6**

Exhibit A
Page 112

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessee, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessee, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Page 3 of 6

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

17. INDEMNITY. Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease

18. ASSIGNMENT. Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

19. DEFAULT. Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due: (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

20. REMEDIES. Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

21. SECURITY DEPOSIT. The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No Interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

22. SEVERABILITY. The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect.

23. NOTICES. All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

24. WAIVER. Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

25. **GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26.     **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

27. **SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. **FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

**LESSOR:**   **Vehicle Titling Trust**

By: _____

Name: _____
Bryan S. Wheeler
Senior Vice President

Title: _____

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: Sonet Transportation and Logistics Inc.

(X)Dated: 8/12/15

(X)By: _____
SIGNATURE

Page 6 of 6



**BUSH** TRUCK LEASING, INC.

6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

## LEASE AGREEMENT

Contract Date: 7·23·2015     Lease ID No.   CSBM0147

### LESSEE

Individual Legal Name (if applicable):
Company Legal Name (if applicable):   Sonet Transportation and Logistics Inc.
Mailing Address: 22 W 35 Street Suite 205
City: National City   State: CA    Zip: 91950

### EQUIPMENT

| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
|---|---|---|---|
| 2012 | Freightliner | Cascadia | 1FUJGLBG4CSBM0147 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

### SUMMARY OF LEASE TERMS

| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
|---|---|---|---|---|---|---|---|---|---|
| 8·1·2015 9·1·2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,950.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

**1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identifiedtherein will be used for commercial purposes.

**2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date shall be the date on which the term of the Lease commences (such period as extended or sooner terminated the "Term"). ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the"Term").

**3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week, 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

**4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

    **A.**    **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that
(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii) Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW, and Lessee will accept the Vehicles "AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, that at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessor for any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Exhibit A
Page 118

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FORANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or if adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Page 3 of 6

Exhibit A
Page 119

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

17. **INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease.

18. **ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee.

19. **DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

20. **REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles,discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

21. **SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No Interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lesseeunder the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

22. **SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

23. **NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

24. **WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

Exhibit A
Page 120

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

25. **GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26. **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

27. **SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. **FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

[SIGNATURE PAGES FOLLOW]

Page 5 of 6

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR:   Bush Truck Leasing, Inc.

By: _____

Name: **Diana S. Cornette**

Title: **Vice President**

LESSEE:  Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

(X)Dated: 7-1-15

LESSEE:  Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

Page 6 of 6



**6961 Cintas Blvd**
**Mason, OH 45040**

**800-766-2874**
**www.bushtrucks.com**

**LEASE AGREEMENT**

Contract Date: 8 · 11 · 2015        Lease ID No.    CSBM0148

| LESSEE |
|---|

Individual Legal Name(if applicable):
Company Legal Name(if applicable):      Sonet Transportation and Logistics Inc.
Mailing Address: 22 W 35 Street Suite 205
City:National City State:CA      Zip: 91950

| EQUIPMENT | | | |
|---|---|---|---|
| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | Cascadia | 1FUJGLBG6CSBM0148 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
| 9 · 1 · 2015<br>10 · 1 · 2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section4A herein, the "TRAC Residual" shall be $26,950.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

1. **GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identifiedherein will be used for commercial purposes.

2. **INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the"Term").

3. **RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

4. **OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

    A.    Terminal Rental Adjustment Clause ("TRAC"). Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that
(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii) Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.**    $1.00 Buyout. Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles "AS IS" and "WHERE IS".

**5.    TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6.    USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessorfor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7.    SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Exhibit A
Page 124

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating to any such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation with respect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Page 3 of 6

Exhibit A
Page 125

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

17. **INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease.

18. **ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee.

19. **DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied.

20. **REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law. The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority: (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor.

21. **SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest. If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee.

22. **SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect.

23. **NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto.

24. **WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

**25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

**26. WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

**27. SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

**28. FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

[SIGNATURE PAGES FOLLOW]

Page 5 of 6

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: **Bush Truck Leasing, Inc.**

By: _____

Name: **Diana S. Cornette**

Title: **Vice President**

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

(X)Dated: **7-1-15**

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

Page 6 of 6



6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

**LEASE AGREEMENT**

Contract Date: 7. 20. 2015          Lease ID No.    CSBM0152

| LESSEE |
|---|
| Individual Legal Name (if applicable): |
| Company Legal Name (if applicable):      Sonet Transportation and Logistics Inc. |
| Mailing Address:  22 W 35 Street Suite 205 |
| City: National City   State: CA      Zip: 91950 |

| EQUIPMENT | | | |
|---|---|---|---|
| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | Cascadia | 1FUJGLBG8CSBM0152 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
| 8·1·2015 9·1·2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

| If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,950.00 |
|---|

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

    1. GRANT OF LEASE. Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

    2. INITIAL TERM. The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

    3. RENT. The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

    4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE. Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

        A.    Terminal Rental Adjustment Clause ("TRAC"). Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that

(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii) Lessee has been advised by tax counsel or other tax advisor, and

(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles "AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessorfor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating to any such tax, impost or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation with respect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

Page 3 of 6

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

17. INDEMNITY. Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease

18. ASSIGNMENT. Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

19. DEFAULT. Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

20. REMEDIES. Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

21. SECURITY DEPOSIT. The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

22. SEVERABILITY. The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

23. NOTICES. All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

24. WAIVER. Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

25. GOVERNING LAW. This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26. WAIVER OF DAMAGES. Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

27. SUCCESSORS AND ASSIGNS. This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. FORCE MAJEURE. The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

[SIGNATURE PAGES FOLLOW]

Page 5 of 6

Exhibit A
Page 133

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR:   Bush Truck Leasing, Inc.

By: _____

Name:   **Diana S. Cornette**

Title:   **Vice President**

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: Sonet Transportation and Logistics Inc.

(X)Dated: 7/1/15

(X)By: _____
SIGNATURE

Page 6 of 6



**BUSH**
TRUCK LEASING, INC.

6960 Cintas Blvd
Mason, Ohio 45040
800-766-2874 / 513-234-7910
Fax 513-234-7940

**vehicletitling**

## LEASE AGREEMENT

Contract Date: 10-1-2015          Lease ID No.      CSBM0153

| LESSEE |
|---|
| Individual Legal Name (if applicable):<br>Company Legal Name (if applicable):    Sonet Transportation and Logistics Inc.<br>Mailing Address: 22 W 35 Street Suite 205<br>City: National City   State: CA       Zip: 91950 |

### EQUIPMENT

| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
|---|---|---|---|
| 2012 | Freightliner | Cascadia | 1FUJGLBGXCSBM0153 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

### SUMMARY OF LEASE TERMS

| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
|---|---|---|---|---|---|---|---|---|---|
| 10-1-2015<br>11-1-2015 | 36<br>MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

| If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $27,639.00 |
|---|

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between Vehicle Titling Trust ("Lessor"), and LESSEE referenced above.

**1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, owarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

**2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

**3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

**4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

    **A.**    **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that

(i)   Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii)  Lessee has been advised by tax counsel or other tax advisor, and

(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.      $1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein.   Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee.  THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

    **5.   TAX INDEMNIFICATION.**  Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes.  In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder.  Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

    **6.   USE OF VEHICLES.**  Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound.  Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor.  After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles.  Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessorfor any damage to the Vehicles as the result of such removal.  In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses.  Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

    **7.   SURRENDER.**  Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Exhibit A
Page 136

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessee may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating to any such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incured by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

17. INDEMNITY. Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder The provisions of this Section 17 shall survive termination of this Lease

18. ASSIGNMENT. Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees  Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

19. DEFAULT. Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee.  Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment.  Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact.  Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law.  This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

20. REMEDIES. Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process,  Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles.discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority  (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages.  If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency.  Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days.  Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter.  Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor.  Lessor's remedies hereunder shall be cumulative.  Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20.  Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies.  Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease.  Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore.  Lessee waives any defense based on statutes of limitations or laches in actions for damages.  In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

21. SECURITY DEPOSIT. The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules.  The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds.  No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest  If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above.  In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease.  If no Default has then occurred, upon the expiration or earlier termination of the Term  of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

22. SEVERABILITY. The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

23. NOTICES. All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

24. WAIVER. Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

Exhibit A
Page 138

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

    **25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURYIN ANY LITIGATIONARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

    **26.**    **WAIVER OF DAMAGES.** Lessee waives to the fullest extentpermitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limiton direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor

    **27. SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

    **28. FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

[SIGNATURE PAGES FOLLOW]

Exhibit A
Page 139

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

**LESSOR:**    **Vehicle Titling Trust**

By: _____

Name:_____ Bryan S. Wheeler
           Senior Vice President
Title:_____

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
        SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

LESSEE: Sonet Transportation and Logistics Inc.

(X)Dated: 8/12/15

(X)By: _____
        SIGNATURE

Page 6 of 6



**BUSH** TRUCK LEASING, INC.

6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

## LEASE AGREEMENT

Contract Date: 8-25-2015        Lease ID No.    CSBM0154

| LESSEE |
|---|
| Individual Legal Name (if applicable): |
| Company Legal Name(if applicable):   Sonet Transportation and Logistics Inc. |
| Mailing Address: 22 W 35 Street Suite 205 |
| City:National City State:CA    Zip: 91950 |

| EQUIPMENT | | | |
|---|---|---|---|
| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
| 2012 | Freightliner | Cascadia | 1FUJGLBG1CSBM0154 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment+ Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
| 9-1-2015  10-1-2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

**If Option Upon Expiration of Initial Term of Lease is TRAC under Section4A herein, the "TRAC Residual" shall be $27,639.00**

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

**1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles .Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

**2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the"Term").

**3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION7 HEREOF.

**4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

    **A.**    **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that

(i)   Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii)   Lessee has been advised by tax counsel or other tax advisor, and

(iii)   Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.**     **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any such amounts which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and othersums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or assessed with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessee, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or if adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing insurance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease.

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee.

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law. The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessor's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No Interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest. If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

25. GOVERNING LAW. This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE, OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26. WAIVER OF DAMAGES. Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

27. SUCCESSORS AND ASSIGNS. This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. FORCE MAJEURE. The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

[SIGNATURE PAGES FOLLOW]

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR: Bush Truck Leasing, Inc.

By: _____

Name: Diana S. Cornette

Title: Vice President

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
         SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease

(X)Dated: 8/12/15

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
         SIGNATURE

Page 6 of 6



**TRUCK LEASING, INC.**

6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

## LEASE AGREEMENT

**Contract Date:** 7-23-2015      **Lease ID No.** CSBM0160

### LESSEE

Individual Legal Name (if applicable):
Company Legal Name (if applicable): Sonet Transportation and Logistics Inc.
Mailing Address: 22 W 35 Street Suite 205
City: National City State: CA    Zip: 91950

### EQUIPMENT

| Vehicle Year | Vehicle Make | Vehicle Model | Vehicle Identification Number |
|---|---|---|---|
| 2012 | Freightliner | Cascadia | 1FUJGLBG7CSBM0160 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

### SUMMARY OF LEASE TERMS

| Commencement Date & 1st Basic Rent Date | Initial Term | Rental Periods | Total Number of Payments | Down Payment + Taxes at Closing | Advance or Arrears | Basic Rent (without Taxes) | Doc Fee | Security Deposit | End of Term Option |
|---|---|---|---|---|---|---|---|---|---|
| 8·1·2015 9·1·2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,036.67 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section4A herein, the "TRAC Residual" shall be $26,950.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

    **1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, orwarranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

    **2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the"Term").

    **3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

    **4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms

        A. **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

Exhibit A
Page 147

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease

Lessee hereby certifies, under penalty of perjury, that
(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii) Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.**     **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles"AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessorfor any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same.

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to

Page 2 of 6

Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FORANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses(including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating toany such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation withrespect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein(in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $500,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor30 days prior written notice of any material alteration in termsof policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee

shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

    **17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease

    **18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee

    **19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied

    **20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor

    **21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No Interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee

    **22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect

    **23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto

    **24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder

Page 4 of 6

Exhibit A
Page 150

shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

 **25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Ohio. Ohio law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF THE FEDERAL DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO, OR ANY STATE COURT OF COMPETENT JURISDICTION WITHIN MONTGOMERY COUNTY, OHIO, AND WAIVES ANY RIGHT TO ASSERT THAT ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

 **26.**  **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

 **27. SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

 **28. FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor

[SIGNATURE PAGES FOLLOW]

Exhibit A
Page 151

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written

LESSOR:  Bush Truck Leasing, Inc.

By: _____

Name: __Diana S. Cornette__

Title: __Vice President__

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
       SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition.  Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date.  In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease.

LESSEE: Sonet Transportation and Logistics Inc.

(X)Dated: __7-1-15__          (X)By: _____
                                     SIGNATURE

Page 6 of 6



**BUSH**
*TRUCK LEASING, INC.*

6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

## LEASE AGREEMENT

**Contract Date:** 11.26.2015          **Lease ID No.**     DN135989

| LESSEE |
|---|

Individual Legal Name (if applicable):
Company Legal Name (if applicable):     Sonet Transportation and Logistics Inc.
Mailing Address: 22 W 35 Street Suite 205
City:National City State:CA     Zip: 91950

| EQUIPMENT | | | |
|---|---|---|---|
| **Vehicle Year** | **Vehicle Make** | **Vehicle Model** | **Vehicle Identification Number** |
| 2013 | Volvo | VNL670 | 4V4NC9TG6DN135989 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| **Commencement Date & 1st Basic Rent Date** | **Initial Term** | **Rental Periods** | **Total Number of Payments** | **Down Payment + Taxes at Closing** | **Advance or Arrears** | **Basic Rent (without Taxes)** | **Doc Fee** | **Security Deposit** | **End of Term Option** |
| 12·1·2015 1·1·2016 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,047.43 | $400.00 | $0.00 | TRAC |

If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,150.00

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

1. GRANT OF LEASE. Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, or warranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles. Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

2. INITIAL TERM. The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

3. RENT. The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE. Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms.

    A.    Terminal Rental Adjustment Clause ("TRAC"). Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease.

Lessee hereby certifies, under penalty of perjury, that:

(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,

(ii) Lessee has been advised by tax counsel or other tax advisor, and

(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

B. **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment.

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not ~~extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein.~~ Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles "AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessor for any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same.

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a

physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses (including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating to any such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation with respect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) repair such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein (in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $1,000,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee shall receive credit for any amounts paid to Lessor by the insurer against Lessor's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by

Page 3 of 6

operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease.

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee.

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied.

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount-equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law. The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority: (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor.

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest. If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term  of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee.

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect.

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto.

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

**25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Delaware. Delaware law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF DELAWARE, AND WAIVES ANY RIGHT TO ASSERT THAT

ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26.     **WAIVER OF DAMAGES.**  Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor.  Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease.  Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

27. **SUCCESSORS AND ASSIGNS.**  This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. **FORCE MAJEURE.**  The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

**[SIGNATURE PAGES FOLLOW]**

**Page 5 of 6**

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written.

LESSOR: **Bush Truck Leasing, Inc.**

By: _____

Name: Diana S. Cornette

Title: Vice President

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease.

(X)Dated: 9/30/15

LESSEE: Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

Page 6 of 6



6961 Cintas Blvd
Mason, OH 45040

800-766-2874
www.bushtrucks.com

## LEASE AGREEMENT

**Contract Date:** *11-20-2015*       **Lease ID No.**    DN558092

| LESSEE |
|---|
| **Individual Legal Name (if applicable):** |
| **Company Legal Name (if applicable):**    Sonet Transportation and Logistics Inc. |
| **Mailing Address: 22 W 35 Street Suite 205** |
| **City:** National City **State:** CA     **Zip:** 91950 |

| EQUIPMENT | | | |
|---|---|---|---|
| **Vehicle Year** | **Vehicle Make** | **Vehicle Model** | **Vehicle Identification Number** |
| 2013 | Volvo | VNL670 | 4V4NC9TG3DN558092 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Commencement Date & 1st Basic Rent Date** | **Initial Term** | **Rental Periods** | **Total Number of Payments** | **Down Payment + Taxes at Closing** | **Advance or Arrears** | **Basic Rent (without Taxes)** | **Doc Fee** | **Security Deposit** | **End of Term Option** |
| 12-1-2015 1-1-2015 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,047.43 | $400.00 | $0.00 | TRAC |

| If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,150.00 |
|---|

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

    **1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, or warranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles. Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

    **2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

    **3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

    **4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms.

        **A.**    **Terminal Rental Adjustment Clause ("TRAC").** Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease.

Lessee hereby certifies, under penalty of perjury, that:
(i) Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii) Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.** **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment.

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not ~~extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the~~ option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW, and Lessee will accept the Vehicles "AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessor's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessor for any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same.

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a

Page 2 of 6

physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses (including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating to any such tax, impost or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation with respect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor; or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein (in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $1,000,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trucks; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by

Page 3 of 6

operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease.

18. ASSIGNMENT. Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee.

19. DEFAULT. Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title in any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied.

20. REMEDIES. Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligations) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law. The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority: (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor.

21. SECURITY DEPOSIT. The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessee may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest. If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee.

22. SEVERABILITY. The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect.

23. NOTICES. All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address otherwise specified in writing by the appropriate party hereto.

24. WAIVER. Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

25. GOVERNING LAW. This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Delaware. Delaware law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF DELAWARE, AND WAIVES ANY RIGHT TO ASSERT THAT

ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

    **26.**      **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

    **27. SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

    **28. FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

[SIGNATURE PAGES FOLLOW]

Page 5 of 6

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written.

**LESSOR:** **Bush Truck Leasing, Inc.**

By: _____

Name: Diana S. Cornette

Title: Vice President

**LESSEE:** Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease.

**LESSEE:** Sonet Transportation and Logistics Inc.

(X)Dated: 7-30-15

(X)By: _____
SIGNATURE

Page 6 of 6

Exhibit A
Page 164



**6961 Cintas Blvd**
**Mason, OH 45040**

**800-766-2874**
**www.bushtrucks.com**

## LEASE AGREEMENT

**Contract Date:** 11·20·2015          **Lease ID No.** DN562453

| LESSEE |
|---|

Individual Legal Name (if applicable):
Company Legal Name (if applicable): Sonet Transportation and Logistics Inc.
Mailing Address: 22 W 35 Street Suite 205
City:National City  State:CA     Zip: 91950

| EQUIPMENT | | | |
|---|---|---|---|
| **Vehicle Year** | **Vehicle Make** | **Vehicle Model** | **Vehicle Identification Number** |
| 2013 | Volvo | VNL670 | 4V4NC9TG7DN562453 |

*Refer to Schedule 1 of this Lease Agreement for Equipment details in the event that no Equipment information appears above*

| SUMMARY OF LEASE TERMS | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| **Commencement Date & 1st Basic Rent Date** | **Initial Term** | **Rental Periods** | **Total Number of Payments** | **Down Payment + Taxes at Closing** | **Advance or Arrears** | **Basic Rent (without Taxes)** | **Doc Fee** | **Security Deposit** | **End of Term Option** |
| 12·1·2015 1·1·2016 | 36 MONTHLY | MONTHLY | 36 | $1,500.00 | Arrears | $2,047.43 | $400.00 | $0.00 | TRAC |

| If Option Upon Expiration of Initial Term of Lease is TRAC under Section 4A herein, the "TRAC Residual" shall be $26,150.00 |
|---|

THIS LEASE AGREEMENT ("Lease") is hereby entered into as of the Contract Date above by and between BUSH TRUCK LEASING, INC. ("Lessor"), and LESSEE referenced above.

    **1. GRANT OF LEASE.** Lessor hereby leases to Lessee, and Lessee hereby leases from Lessor, the Equipment described herein, together with all replacements, repairs and additions thereto (individually and collectively, the "Vehicles") on the terms and conditions set forth in this Lease. Lessee agrees that Lessee leases the Vehicles "as-is", and confirms that as of the date of delivery of each Vehicle, such Vehicle is of the design and manufacture selected by Lessee, and as of such date, Lessee has unconditionally accepted such Vehicles in all respects. Lessee further confirms that it has selected the Vehicles on the basis of its own judgment, and expressly disclaims reliance upon any statements, representations, or warranties made by Lessor, and Lessee acknowledges that Lessor is not the manufacturer of the Vehicles. Lessee certifies that the Vehicles identified herein will be used for commercial purposes.

    **2. INITIAL TERM.** The term of this Lease for each Vehicle shall commence on the Contract Date and shall continue for that number of months from the first (1st) day of the month following the Contract Date (unless the Contract Date is the first (1st) day of the month, in which case the Contract Date shall be the date on which the term of this Lease commences) ("Commencement Date") each as set forth in the Summary of Lease Terms (such period as extended or sooner terminated by Lessor as provided herein, the "Term").

    **3. RENT.** The rental payment amount for each Vehicle hereunder (the "Basic Rent") is set forth in the Summary of Lease Terms. Basic Rent on each Vehicle shall begin to accrue on the Contract Date and shall be due and payable in U.S. dollars in immediately available funds by Lessee in advance or arrears for the periods (each a "Rental Period") and for the total number of payments as set forth in the Summary of Lease Terms, in each case, on the first day of each such Rental Period. If the Contract Date does not fall on the first day of the month, the rental for that period of time from the Contract Date until the Commencement Date shall be an amount equal to the daily rental (Basic Rent divided by 7 days for One Week , 14 days for One Biweekly and 30 days for One Month Rental Periods, as applicable), multiplied by the number of days from (and including) the Contract Date to (but not including) the Commencement Date and shall be due and payable on the Commencement Date. Lessee shall pay all amounts other than Basic Rent Lessee is obligated to pay hereunder (the "Supplemental Rent" and together with Basic Rent, the "Rent") when due or if no date is specified herein, on demand. If any Rent payment is not made within five (5) days after its due date, Lessee shall pay a late charge equal to the lesser of 10% of the late rental payment amount, and the maximum amount permitted by law. LESSEE'S PAYMENT OF RENT AND LESSEE'S PERFORMANCE OF ALL OTHER OBLIGATIONS ARE ABSOLUTE AND UNCONDITIONAL AND WITHOUT SET OFF, COUNTERCLAIM, OR ANY DEFENSE WHATSOEVER, INCLUDING, BUT NOT LIMITED TO, ANY RIGHT OR CLAIM THAT LESSEE MAY NOW OR HEREAFTER HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, ANY ASSIGNEE OF LESSOR, OR THE MANUFACTURER OF THE VEHICLES FOR ANY REASON WHATSOEVER, SPECIFICALLY INCLUDING, WITHOUT LIMITATION, ANY CLAIMS THAT LESSEE MAY HAVE AGAINST LESSOR, ANY OF LESSOR'S AFFILIATES, OR ANY ASSIGNEE OF LESSOR WITH RESPECT TO THE SERVICE AND MAINTENANCE AGREEMENT REFERENCED IN SECTION 7 HEREOF.

    **4. OPTION UPON EXPIRATION OF INITIAL TERM OF LEASE.** Upon expiration of the Initial Term of the Lease, Lessee shall comply with the provisions of Clause A or B below, in either case, as specified in the Summary of Lease Terms.

        **A.** Terminal Rental Adjustment Clause ("TRAC"). Lessee agrees that there shall be an adjustment of the Rent to be paid Lessor under the Lease for the Vehicles. It is presently anticipated that the fair market value of the Equipment (the "Estimated Fair Market Value") will equal the TRAC Residual set forth in the Summary of Lease Terms. Upon

Page 1 of 6

expiration of the Initial Term, Lessor will attempt to sell the Equipment. In the event that the Net Proceeds (as defined below) are less than the Estimated Fair Market Value, Lessee shall pay to Lessor the full amount of such shortfall. If the Equipment has not been sold on the last day of the Initial Term, then the Net Proceeds shall be deemed to be zero and Lessee shall immediately pay to Lessor the TRAC Residual. If the Lessor thereafter shall sell the Equipment, the Net Proceeds shall be paid by Lessor to Lessee. Any such payment by either Lessee or Lessor shall be deemed to be a Terminal Rental Adjustment with respect to the Vehicles. As used herein, "Net Proceeds" shall mean the proceeds received by Lessor, after deducting (i) all costs and expenses incurred in connection with the recovery, repair, storage, and sale of the Vehicles, including any and all attorneys' fees and legal expenses, (ii) all late charges and all interest accrued at the Default Rate (as hereinafter defined), and (iii) all rent payments and other obligations of Lessee due and unpaid under the Lease as of the date of the sale or disposition. As to each Vehicle, if the Net Proceeds received by Lessor Lessor from the sale or other disposition of such Equipment after expiration of the Initial Term are less than the TRAC Residual amount for such Equipment as set forth in the Summary of Lease Terms, then Lessee shall immediately pay to Lessor the amount of such deficiency as additional Rent hereunder. If the Net Proceeds are in excess of the TRAC Residual amount, then 100% of such excess shall be returned to Lessee as a reduction in the Rent for such Equipment, provided, however, that Lessor shall be entitled to retain all or any portion of such amount to satisfy any of Lessee's obligations under the Lease.

Lessee hereby certifies, under penalty of perjury, that:
(i)   Lessee intends that more than 50% of the use of the Equipment subject to this TRAC is to be used in a trade or business of the Lessee,
(ii)  Lessee has been advised by tax counsel or other tax advisor, and
(iii) Lessee understands and agrees that, Lessee will not be treated as the owner of the Equipment identified above for federal income tax purposes.

**B.**     **$1.00 Buyout.** Lessee hereby unconditionally agrees to purchase all, but not less than all, of the Equipment for $1.00 upon expiration of the Initial Term of the Lease. Lessee and Lessor agree that Lessee is owner of the Equipment and shall file and pay all license, registration fees, and documentary, sale and use taxes, and personal property taxes and all other taxes, fees and charges relating to the ownership, leasing, rental, sale, purchase, possession or use of the Equipment.

With respect to any option upon expiration of the Initial Term of the Lease set forth herein, if written notice of Lessee's intention to exercise such elected option is not received on a timely basis, then such failure shall constitute an Event of Default, and to the extent that the Lessee fails to return to Lessor the Equipment in accordance with Section 7 hereof, Lessee agrees to pay a daily rental fee equal to 150% of the daily Rent for each day that the Equipment is retained by Lessee; provided, however, such payments shall not extend Lessee's right to have and use the Equipment beyond the Initial Term of the Lease as provided herein. Upon exercise of the option elected by Lessee and payment in full by Lessee of any related purchase amounts and all Rent, Lessor will execute and deliver to Lessee the title to the Vehicles, and any other documentation necessary to transfer title to Lessee. THIS SALE WILL BE WITHOUT ANY REPRESENTATION OR WARRANTY OF ANY KIND BY LESSOR, WHETHER EXPRESS OR IMPLIED IN FACT OR LAW and, Lessee will accept the Vehicles "AS IS" and "WHERE IS".

**5. TAX INDEMNIFICATION.** Except to the extent Section 4B is applicable upon expiration at the Initial Term, it is understood and agreed that Lessor is owner of the Equipment and that Lessor shall be entitled to such tax benefits that are available as owner of the Equipment through depreciation of the total capitalized cost of the Equipment thereof for federal income tax purposes. In the event that Lessor suffers any loss, disallowance, unavailability, or recapture of such depreciation for any reason whatsoever, then, after written notice thereof by Lessor to Lessee, Lessee shall pay to Lessor an additional incremental amount payable on each date that the Basic Rent is thereafter due, which in the opinion of Lessor, will cause Lessor's net after-tax annual cash flow and net after-tax rate of return respectively, that would have been available if Lessor had been entitled to full utilization of the depreciation. In the event that any payment is required to be made pursuant to this Section 5, and such payment is to be made on succeeding rent payment dates, but at such time this Lease shall have been terminated or Rent otherwise no longer shall be due and payable on the remaining rent payment dates, Lessee shall promptly pay Lessor any amount equal to the incremental increase in Basic Rent which would have been required if such tax loss had occurred immediately prior to the last rental payment date on or prior to the expiration or other termination of the Lease. Lessor shall promptly notify Lessee of the commencement of any proceeding by the Internal Revenue Service in respect of any item as to which indemnity is sought hereunder. Lessee's agreement to pay any sums which may become payable pursuant to this Section 5 shall survive the expiration or other termination of this Lease.

**6. USE OF VEHICLES.** Lessee shall use the Vehicles only in its business and in compliance with all laws, rules, and regulations of any jurisdiction where the Vehicles are used or located. Lessee represents and warrants to Lessor at all times that (i) Lessee has the right and ability to enter into this Lease; (ii) this Lease constitutes a valid, legal, and binding obligation and agreement of Lessee, enforceable against Lessee in accordance with its terms; and (iii) that the entering into and performance of this Lease by Lessee will not result in a breach, violation, or default under any judgment, order, law, regulation, loan, mortgage, agreement, indenture, or other instrument applicable to Lessee, or result in any breach of, or constitute a default under, or result in the creation of any lien, charge, security interest, or other encumbrance upon the Vehicles pursuant to any instrument to which Lessee is a party or by which it is bound. Lessee shall (i) use and operate the Vehicles in a careful and prudent manner for the purposes and in the manner intended to be used; (ii) shall keep the Vehicles properly housed or otherwise protected from damage; and (iii) shall pay for all maintenance of Vehicles to keep them in good and efficient working order and condition during the Term of the Lease, including, but is not limited to, Lessee's supplying all fuel, lubricants, and other parts, supplies, maintenance and services, and/or Lessee, upon Lessee's request, entering into a service and maintenance agreement with Lessor or an affiliate of Lessor upon such terms and conditions provided by Lessor. After notice to Lessor, Lessee may, at its own expense, make alterations or add attachments to the Vehicles, provided that such alterations or attachments are removable and do not reduce the value, utility or useful life of the Vehicles. Upon the expiration or termination of the Lease, all alterations or attachments affixed to the Vehicles shall become the property of Lessor if not removed, and if Lessee does remove such attachments, Lessee shall be liable to Lessor for any damage to the Vehicles as the result of such removal. In the event that any federal, state, or local law, ordinance, rule or regulation shall require the installation of any additional accessories to any of the Vehicles, including, but not limited to, anti-pollution and/or safety devices, or in the event that any other modifications to the Vehicles shall be required by virtue of such law, ordinance, rule or regulation, then and in any of such events, Lessee shall pay the full cost thereof, including installation expenses. Lessor may, at its option, arrange for the installation of such Vehicles or the performance of such modifications, and Lessee agrees to pay the full cost thereof immediately upon receipt of an invoice for the same.

**7. SURRENDER.** Upon either the (i) failure by Lessee to exercise any purchase option for any Vehicle set forth herein, or (ii) upon demand by Lessor made pursuant to an Event of Default (as set forth in Section 19 hereof), Lessee shall, at its own expense, return such Vehicle to Lessor to such location within the continental United States as Lessor shall designate, in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease. Upon return of the Vehicles, Lessor, or such entity designated by Lessor, shall perform a

Page 2 of 6

physical and mechanical inspection of the Vehicles. Lessee shall be responsible for the payment of any and all costs associated with the inspection, and for any and all repairs necessary to place the Vehicles in the same condition as when delivered, reasonable wear and tear excepted and otherwise in the condition required by this Lease.

**8. PAINTING.** Lessee may paint the Vehicles in Lessee's customary manner and affix advertising or identifying insignia, provided that, upon the expiration or termination of this Lease, and in the event that Lessee does not purchase the Vehicles pursuant to Section 4.B hereof, Lessee shall, upon the request of Lessor and at Lessee's expense, restore the Vehicles to original condition, ordinary wear and tear excepted.

**9. WARRANTIES.** LESSEE ACKNOWLEDGES AND AGREES THAT LESSOR HAS NOT MADE, AND SHALL NOT BE DEEMED TO HAVE MADE, ANY EXPRESS OR IMPLIED WARRANTY AS TO MERCHANTABILITY, FITNESS FOR ANY PURPOSE OR USE, DESIGN OR CONDITION OF VEHICLES, QUALITY OF MATERIAL OR WORKMANSHIP, OR AS TO ANY OTHER MATTER WHATSOEVER RELATING TO THE VEHICLES, AND LESSOR SHALL NOT BE LIABLE FOR ANY INDIRECT, CONSEQUENTIAL, INCIDENTAL, OR PUNITIVE DAMAGES ARISING OUT OF THE USE OR INABILITY TO USE THE VEHICLES, OR ANY INADEQUACY, DEFICIENCY, OR DEFECT IN THE VEHICLES. LESSEE AGREES THAT LESSEE LEASES THE VEHICLES "AS IS". Lessor agrees, to the extent possible and without increasing its liability hereunder, and upon request, to assign to Lessee, any warranty of a manufacturer or seller relating to the Vehicles available to Lessor, provided, however, that the foregoing rights shall automatically revert to Lessor upon the occurrence and during the continuance of any Event of Default hereunder, or upon return of the Vehicles to Lessor. Lessee agrees to settle all claims with respect to the Vehicles directly with the manufacturers thereof, and to give Lessor prompt notice of any such settlement and the details of such settlement.

**10. TITLE AND INSPECTION.** Lessee, at its expense, shall protect and defend Lessor's title and keep it free of all claims and liens except those claims and liens created by Lessor in connection with any assignment or financing by Lessor. Lessor may inspect the Vehicles at any time without prior notice during regular business hours. If, at any time during the Term of this Lease, Lessor supplies Lessee with labels, plates or other markings stating that the Vehicles are owned by Lessor, Lessee shall affix and keep the same in a prominent place on the Vehicles.

**11. LICENSES.** Lessee shall at its expense obtain all necessary licenses (including motor Vehicle plates) and registrations, required for the use and operation of each Vehicle. All certificates of title or registration of each Vehicle shall name Lessor as the owner thereof.

**12. INTERESTS IN VEHICLES.** Lessee's rights with respect to this Lease and any Vehicles leased hereunder will be subject to any rights and interest in and to said Vehicles which may be granted by Lessor (or Lessor's affiliates) to any assignee or lender of Lessor (or Lessor's affiliates). Lessor may assign to a lender or any other assignee all or any part of Lessor's rights hereunder, including a security interest in the Vehicles and the right to receive rents and other sums due hereunder. Upon notice of such assignment in writing by a lender, assignee and/or Lessor, Lessee shall pay all rents and other sums due or to become due under this Lease directly to such lender or assignee without set off, counterclaim, or any defense whatsoever.

**13. TAXES.** Lessee shall pay all personal property, sales or use taxes, business licenses, assessments, penalties, and charges which may be levied or asserted with respect to the Vehicles (except income taxes levied on lease payments to Lessor). In the event that any such taxes, licenses, assessments, penalties, or charges are paid by Lessor, Lessee shall reimburse and pay Lessor immediately after Lessor notifies Lessee in writing of the amount of such taxes, licenses, assessments, penalties, charges or expenses paid by Lessor, as well as an administrative fee. Increases or decreases in sales or use tax rates will affect all lease payments after the effective date of the change by the taxing authority. Lessee shall indemnify and hold Lessor harmless from and against any loss, cost or expense arising out of or relating to any such tax, import or levy, including, without limitation, any penalties, interest and fines relating thereto.

**14. FINES.** Lessee shall pay all fines due to overload, overlength, overweight, lack of plates or permits, speeding and any other charges which may be imposed or assessed in respect to the Vehicles and/or Lessee's use thereof. The provisions of this Section 14 shall survive the expiration or other termination of this Lease.

**15. LOSS OR DAMAGE.** Lessee shall bear the entire risk of loss, theft, destruction of or damage to any Vehicle from any cause whatsoever ("Loss or Damage"). Lessee shall promptly notify Lessor in writing of any Loss or Damage. No Loss or Damage to any Vehicles shall relieve Lessee of any obligation with respect to such Vehicle under this Lease. In the event of Loss or Damage, Lessee shall, at the option of Lessor: (a) put such Vehicle in good condition and repair in accordance with the manufacturer's recommendations, and to the reasonable satisfaction of Lessor, at Lessee's expense; (b) replace such Vehicle with a like Vehicle (same value, utility and useful life as damaged Vehicle) in good condition and repair as approved by Lessor in Lessor's sole discretion with clear title thereto vested in Lessor, or (c) pay Lessor on or before the next rent payment date as set forth in accordance with Section 3 hereof (such payment date, the "Loss Payment Date") in cash the sum of: (i) all amounts then due Lessor by Lessee under the Lease relating to such Vehicle, which amounts shall be prorated through the Loss Payment Date, plus (ii) an amount equal to the present value of the TRAC Residual, if any, relating to such Vehicle (as set forth in the Summary of Lease Terms), discounted at 5.0% computed from the expiration of the Initial Term of the Lease to the Loss Payment Date, plus (iii) an amount equal to the present value of the unpaid future remaining Rents for the Initial Term of the Lease, relating to such Vehicle discounted at 5.0% computed from the scheduled payment dates for such Rents to the Loss Payment Date (the "Casualty Value Amount"). Upon receipt of the Casualty Value Amount set forth in (c) above, Lessor shall assign to Lessee (or Lessee's insurer) Lessor's interest in such Vehicle in its then condition and location, "AS IS" without any warranty whatsoever, express or implied. If Lessee is required to repair any Vehicle in accordance with (a) above, or to replace any Vehicle in accordance with (b) above, the insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof shall be first applied to pay any amounts then due under this Agreement, and then shall be paid to Lessee upon proof satisfactory to Lessor that such repairs have been completed as required herein (in the case of (a)), or of adequate purchase and title documents in Lessor's sole discretion (in the case of (b)). In the event that Lessee is obligated to pay to Lessor the amount specified in (c) above, Lessee shall be entitled to a credit against such amount equal to the amount of insurance proceeds actually received by Lessor, if any, pursuant to Section 16 hereof, on account of such Vehicle.

**16. INSURANCE.** Lessee shall obtain and maintain insurance on or with respect to each Vehicle at its own expense and in the amounts and forms satisfactory to Lessor. In no event shall any insurance coverage be less than the following: (a) physical damage insurance insuring against loss or damage to the Vehicles in an amount not less than the full replacement value of such Vehicle; and (b)(i) in all States except Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $500,000 combined single limit for bodily injury liability and property damage; or (b)(ii) for the State of Florida: (1) not greater than $500 deductible for collision, fire, theft, and comprehensive, and (2) $250,000 per person / $1,000,000 per incident bodily injury liability, and (3) $100,000 property damage liability. In addition, the following require $1,000,000 excess liability coverage (umbrella): (a) truck/tractors over 45,000 lbs.; (b) trailers/semi-trailers; tow trailers; and (c) limo uses for livery. Lessee shall furnish Lessor with a certificate of insurance evidencing issuance of such insurance to Lessee in at least the minimum amount required herein, naming Lessor and such other parties designated by Lessor as additional insured thereunder for liability coverage, and as loss payee for property damage coverage. Each policy shall require insurer to give Lessor 30 days prior written notice of any material alteration in terms of policy or cancellation thereof, and shall provide that no action, misrepresentation or breach of warranty of Lessee shall invalidate the policy. If Lessee fails to provide such insurance, Lessor shall have the right, but no duty, to obtain such insurance, and Lessee shall pay Lessor all costs thereof, including all costs incurred by Lessor in obtaining such insurance together with interest at the Default Rate from the date paid by Lessor to the date paid in full by Lessee. Lessee shall not use any Vehicle if the insurance required herein is not in full force and effect with respect to such Vehicle. Upon Loss or Damage as set forth in Section 15 hereof, Lessee shall receive credit for any amounts paid to Lessor by the insurer against Lessee's obligations hereunder.

**17. INDEMNITY.** Lessee shall indemnify Lessor against, and hold Lessor harmless from, any and all claims, actions, damages, obligations, liabilities, liens (including any arising or imposed under the doctrines or strict liability in tort or product liability), and costs and expenses (including attorneys fees), arising from or out of the manufacture, purchase, lease, possession, operation, condition, return, or use of the Vehicles, or by

operation of law, excluding however any of foregoing resulting solely from the gross negligence or willful misconduct of Lessor. Lessee agrees that upon written notice by Lessor of assertion of any such claim, action, damage, obligation, liability, or lien, Lessee, at Lessee's expense shall assume full responsibility for the defense thereof, provided that Lessor shall have the right, but not the obligation, to participate in any defense conducted by Lessee without relieving Lessee of any of its obligations hereunder. The provisions of this Section 17 shall survive termination of this Lease.

**18. ASSIGNMENT.** Except as otherwise permitted herein, without Lessor's prior written consent, Lessee shall not assign, transfer, pledge, hypothecate or otherwise dispose of this Lease, the Vehicles or any interest therein, or sublet or lend the Vehicles, or permit the Vehicles to be used by anyone except Lessee or Lessee's authorized employees. Lessor may assign this Lease or any interest therein in whole or part without notice to Lessee.

**19. DEFAULT.** Lessee shall be in default of this Lease upon the happening of any of the following events or conditions which shall constitute "Events of Default": (a) Lessee fails to pay any Rent or other amount when due; (b) Lessee fails to observe, keep or perform any other covenant or provision of this Lease required to be observed, kept, or performed, by Lessee; (c) Lessee removes, sells, transfers, encumbers, creates a security interest in, relinquishes possession of the Vehicles, or performs any act which impairs Lessor's title to any Vehicle or attempts any of the foregoing; (d) Lessee makes a misrepresentation to Lessor of any matter or covenant connected with this Lease; (e) Lessee fails to satisfy any traffic ticket or summons or fails to register any Vehicle; (f) Lessee becomes insolvent, bankrupt or has a trustee or receiver appointed for Lessee or for a substantial part of Lessee's property; (g) Lessee experiences a material change in its business or affairs (including termination of Lessee's employment or termination of the contract under which Lessee provides services or a change in the control or ownership of Lessee or Lessee's employer or the party with which Lessee contracts to provide services) which in Lessor's sole judgment impairs the security of any Vehicle or increases the credit risk involved therein; (h) Lessee attempts to assign this Lease without the consent of Lessor; or (i) Lessee fails to notify Lessor of any material change in its business and affairs, including a change in the ownership or control of Lessee. Lessee hereby irrevocably appoints and constitutes Bush Truck Leasing, Inc. and its successors and assigns, the true and lawful attorney-in-fact of Lessee, with full power in the name of Lessee upon the occurrence of an Event of Default, (i) to demand and receive any and all moneys and claims for moneys due in respect of or relating to the Equipment, (ii) to assign or transfer any of Lessee's rights under this Lease or in the Equipment (including assigning the rights of Lessee to any replacement Lessee hereunder and/or causing any other person to become the registered owner of the Equipment) and (iii) to take any other action in respect of this Lease or any of the Equipment. Lessee ratifies and approves all acts of Bush Truck Leasing, Inc., as attorney-in-fact. Bush Truck Leasing, Inc., as attorney-in-fact will not be liable for any acts or omissions or errors of judgment or mistake of fact or law. This power, being coupled with an interest, is irrevocable until all obligations under this Lease have been fully satisfied.

**20. REMEDIES.** Upon the occurrence of any Event of Default, Lessor may declare this Lease to be in default, and at any time thereafter, Lessor, at its option, may do any one or more of the following: (a) cancel this Lease; (b) proceed by appropriate action to enforce performance of the Lease at Lessee's expense or to recover damages (including attorneys fees) for the breach thereof; (c) demand that Lessee, and in such case the Lessee shall, return all or any part of the Vehicles promptly in the manner required by and in accordance with Section 7 hereof; (d) enter, with or without legal process, Lessee's premises or any other premises where the Vehicles are located, and take possession of all or any part of the Vehicles without any liability to Lessee by reason of such entry; (e) sell, lease, or otherwise dispose of all or any part of the Vehicles at a public or private sale, which may be conducted where such Vehicles are then located; (f) demand that Lessee, and in such case Lessee shall, pay to Lessor as liquidated damages for loss of a bargain and not as a penalty an amount equal to the sum of (i) all amounts due and unpaid under the Lease (including without limitation any indemnity obligation) plus interest thereon from the due date thereof at a per annum interest rate equal to the prime rate of interest then in effect as published in the Wall Street Journal plus 2.0% (the "Default Rate"), plus (ii) the present value of all future Rent payments for such Vehicles, discounted at 5.0%, plus (iii) the present value of the TRAC Residual, if any, discounted at 5.0%, plus (iv) all costs and expenses incurred by Lessor in enforcing Lessor's rights hereunder (including, without limitation, all costs of repossession, recovery, storage, repair, sale, re-lease, and attorneys' fees), together with interest thereon at the Default Rate from the date of demand to the date of payment in full (the "Liquidated Damages"), or (g) exercise any other right or remedy which may be available to Lessor under the Uniform Commercial Code or any other applicable law. The proceeds of any sale or lease of the Vehicles by Lessor shall be applied in the following order of priority: (1) to pay all of Lessor's expenses in taking, holding, preparing for sale or lease, and disposing of the Vehicles, including all attorneys fees and legal expenses, then (2) to pay any late charges and all interest accrued at the Default Rate; then (3) to pay accrued but unpaid Rent payments, then (4) to pay any other unpaid sums due under this Lease including Liquidated Damages. If the proceeds of any sale or lease are not sufficient to pay the amounts owed to Lessor under this Lease, Lessee will pay the deficiency. Lessor may also, without liability, take any personal property stored within the Vehicles and Lessee may store any such property at Lessee's expense for 30 days. Lessee will be obligated to reclaim such property within 30 days and hereby waives any rights in such property thereafter. Any unclaimed property will be deemed abandoned after 30 days and will be discarded by Lessor. Lessor's remedies hereunder shall be cumulative. Any security deposit paid by Lessee to Lessor in connection with this Lease shall be forfeited by Lessee upon the happening of any Event of Default, and shall be applied to Lessee's obligations under this Lease pursuant to this Section 20. Lessor's remedies hereunder may be exercised instead of or in addition to any other legal or equitable remedies. Lessor has the right to set off any sums received from any source (including insurance proceeds) against Lessee's obligations under this Lease. Lessee waives its right to object to the notice of the time or place of sale or lease, and to the manner and place of any advertising therefore. Lessee waives any defense based on statutes of limitations or laches in actions for damages. In case of failure by Lessee to pay any fees, assessments, charges, or taxes arising with respect to the Vehicles, Lessor shall have the right, but not the obligation to pay such amounts, and in that event, the cost thereof shall be payable by Lessee to Lessor upon demand, together with interest at the Default Rate from the date of disbursement by Lessor.

**21. SECURITY DEPOSIT.** The Security Deposit shall be held by Lessor during the entire Term of the Lease, including the Interim Term and any renewal term, as security for the full payment and performance of the terms, conditions and obligations of Lessee hereunder and under any and all Schedules. The Security Deposit shall not excuse the performance at the time and in the manner prescribed or any obligation of Lessee or cure a default of Lessee. Lessor may, but shall not be required to, apply such Security Deposit towards discharge of any overdue obligation of Lessee. Lessor shall be entitled to commingle the Security Deposit with any of its own funds. No interest shall accrue on the Security Deposit and Lessor shall have no liability to account to Lessee for any interest. If Lessor shall apply any of the Security Deposit towards any obligations of Lessee under the Lease, Lessee shall, upon demand, pay to Lessor an amount necessary to return the Security Deposit to the sum specified above. In furtherance thereof, Lessee hereby grants to Lessor a security interest in the cash comprising the Security Deposit from time to time and any and all interest thereon, together with the proceeds thereof, to secure the prompt payment as and when due of all indebtedness, and the prompt performance as and when due of all obligations, of Lessee now or hereafter required under the Lease. If no Default has then occurred, upon the expiration or earlier termination of the Term of the Lease, the balance of the Security Deposit then held by Lessor shall promptly be paid to Lessee.

**22. SEVERABILITY.** The invalidation of any provision or provisions of this Lease as unenforceable shall not operate to invalidate the remainder of the Lease which shall remain in full force and effect.

**23. NOTICES.** All notices relating to this Lease shall be delivered in person to an officer of Lessor or Lessee or mailed to the respective addresses shown above on the first page of this Lease, or to such address as otherwise specified in writing by the appropriate party hereto.

**24. WAIVER.** Lessor's forbearance of exercise of any right or remedy on Lessee's breach of any terms, covenants or conditions hereunder shall not be deemed a waiver of such right or remedy, the requirement of punctual performance, or any of its remedies upon any other or subsequent breach or default.

**25. GOVERNING LAW.** This Lease takes effect upon its acceptance and execution by Lessor, and shall be governed, interpreted and construed under the laws of the State of Delaware. Delaware law shall prevail in the event of any conflict of law without regard to, and without giving effect to, the application of choice of law rules. LESSEE WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING FROM OR RELATED TO THIS LEASE, AND LESSEE SUBMITS TO THE JURISDICTION OF DELAWARE, AND WAIVES ANY RIGHT TO ASSERT THAT

ANY ACTION INSTITUTED BY LESSOR IN ANY SUCH COURT IS IN THE IMPROPER VENUE OR SHOULD BE TRANSFERRED TO A MORE CONVENIENT FORUM.

26.    **WAIVER OF DAMAGES.** Lessee waives to the fullest extent permitted by law any right to or claim of any punitive, exemplary, indirect, special, consequential, or incidental damages against Lessor. Lessee agrees that, in the event of a dispute, claim or controversy against Lessor, Lessee shall be limited to the recovery of actual direct damages sustained by it, subject to any limit on direct damages set forth in this Lease. Lessee will not accept or attempt to collect through the courts or otherwise any punitive, exemplary, indirect, consequential, or incidental damages from Lessor.

27. **SUCCESSORS AND ASSIGNS.** This Lease shall be binding on and inure to the benefit of Lessor and Lessee and their respective successors and assigns permitted hereunder.

28. **FORCE MAJEURE.** The obligations of Lessor hereunder shall be suspended to the extent that it is hindered or prevented from complying therewith because of labor disturbances, acts of God, fires, storms, accidents, failure of the manufacturer to deliver any of the Vehicles, court order, governmental regulations, or other interference or any cause whatsoever not within the sole control of Lessor.

**[SIGNATURE PAGES FOLLOW]**

Page 5 of 6

IN WITNESS WHEREOF, the parties hereto have entered into this Lease Agreement as of the date first above written.

**LESSOR:** **Bush Truck Leasing,** Inc.

By: _____

Name: Diana S. Cornette

Title: Vice President

**LESSEE:** Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

## EQUIPMENT ACCEPTANCE

Lessee hereby confirms that the Equipment has been delivered, duly assembled and in good working order and condition. Lessee confirms that after a reasonable opportunity to inspect the Equipment, it has solely selected, and unconditionally and irrevocably accepted the Equipment as-is, where-is for all purposes of this Lease as of this date. In the event that the Equipment is not delivered and accepted within thirty (30) days of Lessee's signing of this Equipment Acceptance, Lessee hereby authorizes Lessor to increase the Payments to reflect any Lease rate increase applicable to the Lease.

(X)Dated: 9-30-15

**LESSEE:** Sonet Transportation and Logistics Inc.

(X)By: _____
SIGNATURE

Page 6 of 6